1    DAN MARMALEFSKY (CA SBN 95477)
     dmarmalefsky@mofo.com
2    SAMANTHA P. GOODMAN (CA SBN 197921)
     SGoodman@mofo.com
3    MORRISON & FOERSTER LLP
     555 West Fifth St., Suite 3500
4    Los Angeles, California 90013-1024
     Telephone: 213.892.5200
5    Facsimile: 213.892.5454

6    Attorneys for Defendant
     CELLCO PARTNERSHIP dba VERIZON
7    WIRELESS

8

9            UNITED STATES DISTRICT COURT

            CENTRAL DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| ANGELA GASPAR and DARRIN WILLARD, on behalf of Themselves and all others similarly situated, | Case No. CV10-02139-DSF(SSx) |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON COMMUNICATIONS, INC., VODAPHONE GROUP PLC and DOES 1-100, | |
| Defendants. | Date:      August 9, 2010<br>Time:     1:30 p.m.<br>Judge:    Hon. Dale S. Fischer<br>Courtroom: Roybal 840 |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD

HEREIN:

     PLEASE TAKE NOTICE that on August 9, 2010 at 1:30 p.m., or as soon

thereafter as the matter may be heard, in the courtroom of the Honorable Dale S.

Fischer, United States District Judge, Central District of California, located at 255

East Temple Street, Los Angeles, California 90012, Defendant Cellco Partnership

dba Verizon Wireless will move, and hereby does move to dismiss Plaintiffs'

1  Complaint pursuant to Fed. R. Civ. P. Rule 12(b)(6) on the grounds that it fails to

2  state a claim upon which relief can be granted.[1]

3      This Motion is based on this Notice of Motion and Motion, Defendant's

4  supporting Memorandum of Points and Authorities, Defendant's Request for

5  Judicial Notice and the Declaration of Ana Diaz and exhibits attached thereto, and

6  the court records and files in this Action.

7      This motion is made following a conference of counsel pursuant to Local

8  Rule 7-3 which took place on May 17, 2010.

9

10 Dated:    June 4, 2010          DAN MARMALEFSKY
                                   SAMANTHA P. GOODMAN
11                                 MORRISON & FOERSTER LLP

12

13                                 By:/s/ Dan Marmalefsky
                                       Dan Marmalefsky
14

15                                 Attorneys for Defendant
                                   CELLCO PARTNERSHIP dba
16                                 VERIZON WIRELESS

17

18

19

20

21      [1] Verizon Wireless files this Motion to Dismiss concurrently with the filing

22 of its Motion to Compel Arbitration and Stay Proceedings.  Verizon Wireless
   contends that the Motion to Compel Arbitration and Stay Proceedings should be

23 considered and ruled upon by the Court first and that this Motion to Dismiss should
   only be considered by the Court in the event the Motion to Compel Arbitration and

24 Stay Proceedings is denied.  Verizon Wireless' precautionary filing of this Motion
   to Dismiss should not be construed as a waiver of the right to compel arbitration.

25 Verizon Wireless has calendared this motion for hearing one month after the

26 hearing date on the Motion to Compel Arbitration, so that the Court and Plaintiffs'
   counsel need not devote attention to this motion in the event the latter motion is

27 granted and this motion becomes moot.

28

# TABLE OF CONTENTS

                                                                    **Page**

I.     INTRODUCTION ...................................................................................1

II.    SUMMARY OF PLAINTIFFS' ALLEGATIONS ........................................2

III.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM ......................3

       A.    Plaintiffs' Claims Are Preempted By The Federal
             Communications Act..................................................................4

       B.    Plaintiffs' First Cause Of Action Fails To State A Claim For
             Violation Of The CLRA..............................................................7

             1.    The Non-Proration Provision Does Not Violate Civil
                   Code Section 1770(a)(14) ..............................................7

             2.    The Non-Proration Provision Does Not Violate Civil
                   Code Section 1770(a)(19) ..............................................8

                   a.    Plaintiffs Have Not Alleged Procedural
                         Unconscionability ................................................9

                   b.    Plaintiffs Have Not Alleged Substantive
                         Unconscionability .............................................. 11

       C.    Plaintiffs' Second Cause Of Action Fails To State A Claim
             For Violation Of California Business & Professions Code
             Section 17200 ......................................................................... 13

             1.    Plaintiffs Have Not Alleged Any Unlawful Conduct.............. 13

             2.    Plaintiffs Have Not Alleged Any Fraudulent
                   Conduct ...................................................................... 14

             3.    Plaintiffs Have Not Alleged Any Unfair Conduct................... 15

       D.    Plaintiffs' Third Cause Of Action Fails To State A Claim
             For Unjust Enrichment/Common Law Restitution ............................ 17

       E.    Plaintiff Angela Gaspar Lacks Standing To Assert Any
             Claim ..................................................................................... 18

IV.    CONCLUSION........................................................................... 20

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*A & M Produce Co. v. FMC Corp.,*
135 Cal. App. 3d 473 (1982) ..................................................... 9, 11

*Aron v. U-Haul Co. of Cal.,*
143 Cal. App. 4th 796 (2006) ................................................... passim

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ..................................................................9

*AT&T Corp. v. FCC,*
349 F.3d 692 (D.C. Cir. 2003) ......................................................5

*Augustine v. FIA Card Serv., N.A.,*
485 F. Supp. 2d 1172 (E.D. Cal. 2007) ........................................8

*Baggett v. Hewlett-Packard Co.,*
No. SACV 07-0667 AG (RNBx), 2009 U.S. Dist. LEXIS 95241
(C.D. Cal. Sept. 29, 2009) ......................................................... 16

*Ball v. GTE Mobilnet of Cal.,*
81 Cal. App. 4th 529 (2000) ...................................................... 5, 6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)....................................................................4

*Belton v. Comcast Cable Holdings,*
151 Cal. App. 4th 1224 (2007) ................................................ passim

*Camacho v. Auto. Club of S. Cal.,*
142 Cal. App. 4th 1394 (2006) ................................................... 17

*Cellco P'ship v. Hatch,*
431 F.3d 1077 (8th Cir. 2005) .................................................. i, 5

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) .............................................................. 15

*Davis v. Ford Motor Credit Co.,*
179 Cal. App. 4th 581 (2009) ................................................. 7, 17

*Dinosaur Dev., Inc. v. White,*
216 Cal. App. 3d 1310 (1989) ................................................... 18

*Doe v. United States (In re Doe),*
58 F.3d 494 (9th Cir. 1995) ..........................................................4

*Durell v. Sharp Healthcare,*
183 Cal. App. 4th 1350 (2010) ............................................. 17, 19

*Dyer Bros. Golden West Iron Works v. Central Iron Works,*
182 Cal. 588 (1920) .................................................................. 14

*Fedor v. Cingular Wireless Corp.,*
355 F.3d 1069 (7th Cir. 2004) ......................................................5

*Hall v. Time Inc.,*
158 Cal. App. 4th 847 (2008) .................................................... 19

*Hoffman v. Cingular Wireless,*
LLC, No. 06-CV-1021 W(BLM), 2008 U.S. Dist. LEXIS 67573
(S.D. Cal. Sept. 4, 2008) ........................................................... 19

*In re Comcast Cellular Telecom. Litigation,*
  949 F. Supp. 1193 (E.D. Pa. 1996) ..................................................6

*In re Southwestern Bell,*
  14 F.C.C.R. 19,898 (1999) ............................................................ 5, 7

*In re Wireless Consumers Alliance, Inc.,*
  15 F.C.C.R. 17021 (2000) .............................................................. 4, 5

*Jensen v. Quality Loan Serv. Corp.,*
  No. 09-CV-01789-OWW-DLB, 2010 U.S. Dist. LEXIS 26647
  (E.D. Cal. Mar. 19, 2010) ................................................................ 19

*Jogani v. Super. Ct.,*
  165 Cal. App. 4th 901 (2008) ..................................................... 17, 18

*Lee v. Chase Manhattan Bank,*
  No. C07-04732 MJJ, 2008 U.S. Dist. LEXIS 25007
  (N.D. Cal. Mar. 14, 2008) ................................................................ 19

*Lopez v. Wash. Mut. Bank,*
  No. 1:09-CV-1838 ANI JLT, 2010 U.S. Dist. LEXIS 38307
  (E.D. Cal. Apr. 16, 2010) ............................................................ 17, 18

*Lorenzo v. Qualcomm Inc.,*
  603 F. Supp. 2d 1291 (S.D. Cal. 2009) .............................................. 17

*Lozano v. AT&T Wireless Servs., Inc.,*
  504 F.3d 718 (9th Cir. 2007) .............................................................6

*Melchior v. New Line Prods., Inc.,*
  106 Cal. App. 4th 779 (2003) ........................................................... 17

*Meyer v. Sprint Spectrum L.P.,*
  45 Cal. 4th 634 (2009) ..................................................................... 19

*Morris v. Redwood Empire Bancorp,*
  128 Cal. App. 4th 1305 (2005) ........................................ 9, 10, 11, 13

*Navarro v. Block,*
  250 F.3d 729 (9th Cir. 2001) .............................................................3

*People v. Casa Blanca Convalescent Homes Inc.,*
  159 Cal. App. 3d 509 (1984) ............................................................ 15

*Plotkin v. Sajahtera, Inc.,*
  106 Cal. App. 4th 953 (2003) ........................................................... 17

*Ricker v. Rombough,*
  120 Cal. App. 2d Supp. 912 (1953) .................................................. 14

*Samura v. Kaiser Found. Health Plan, Inc.,*
  17 Cal. App. 4th 1284 (1993) ........................................................... 16

*Shadoan v. World Savings and Loan Ass'n,*
  219 Cal. App. 3d 97 (1990) ........................................................... 9, 10

*Shvarts v. Budget Group, Inc.,*
  81 Cal. App. 4th 1153 (2000) ........................................................... 15

*Spiegler v. Home Depot U.S.A., Inc.,*
  552 F. Supp. 2d 1036 (C.D. Cal. 2008) ....................................... 15, 16

*Spielholz v. Super. Ct.,*
  86 Cal. App. 4th 1366 (2001) .............................................................4

*Van Ness v. Blue Cross of Cal.,*
   87 Cal. App. 4th 364 (2001) ........................................................... 7, 16

*Wayne v. Staples, Inc.,*
   135 Cal. App. 4th 466 (2006) ........................................................... 13

## STATUTES

47 U.S.C. § 332(c)(3)(A) .........................................................................4

Cal. Bus. & Prof. Code  § 17200 ....................................................... 3, 15

Cal. Civ. Code § 1770(a)........................................................................8

Cal. Civ. Code §  1770(a)(14)..................................................................8

Cal. Civ. Code §  1770(a)(19)..................................................................9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Angela Gaspar and Darrin Willard's complaint stems from their apparent dissatisfaction with one of the terms of the contract they each signed with Verizon Wireless — specifically, that their wireless phone service is sold to them in monthly increments and that if they cancel their phone service before the end of a monthly billing cycle, they are responsible for paying for that full month of service. Plaintiffs do not contend that they were unaware of this term when they signed their contracts nor do they claim that Verizon Wireless in any way misrepresented the terms of the contract.  Instead, they allege that this policy of "non-proration" per se violates California's Consumer Legal Remedies Act and Unfair Competition Law. This contention fails as a matter of law.

First, Plaintiffs' state law claims are barred by the Federal Communications Act ("FCA"), which places exclusive jurisdiction over the rates and rate structures for wireless communication services with the Federal Communications Commission ("FCC").  The decision as to the increments of time for which service will be offered and whether to allow customers to change these increments by unilaterally cancelling service in the middle of such an increment is a fundamental part of the rate structure for wireless service.  Numerous courts have held that the FCA preempts state law actions, such as this one, that challenge wireless carriers' decisions on how and in what increments to price their services. To the extent Plaintiffs have a complaint about Verizon Wireless's rate structure, the proper forum for this issue would be the FCC, not California law.

Second, even if Plaintiffs' claims were not preempted, they still necessarily fail as a matter of law because the terms of the contracts they specifically agreed to are in no way unconscionable, unlawful, or unfair.  As with any periodic service contract, the service must be sold in some unit of time, and there is absolutely no authority to suggest that selling a service in monthly increments is so egregious as

1  to be labeled unconscionable.  While Plaintiffs contend that Verizon Wireless could

2  program its billing systems to allow Plaintiffs to receive a refund if they cancel

3  their service in the middle of a monthly increment, that is beside the point;  there is

4  simply no legal authority to suggest that — even if this was true — a clearly

5  disclosed and freely agreed to contractual term that did not allow for such proration

6  should be voided as a matter of law.  Indeed, Plaintiffs could readily have avoided

7  the harm about which they complain by simply cancelling the service agreement on

8  the last day of the billing cycle instead of earlier.  Thus, there is no basis for finding

9  the terms of the contract unfair or unconscionable.

10       Finally, the claims of Plaintiff Angela Gaspar should be dismissed for lack of

11  standing because she has not yet cancelled her wireless phone service with Verizon

12  Wireless, the disputed "non-proration" policy has not been applied against her, and

13  she therefore has not suffered any harm as a result of it.

14       Plaintiffs' claims against Verizon Wireless should be dismissed.

15  **II.    SUMMARY OF PLAINTIFFS' ALLEGATIONS**

16       Plaintiffs allege that they each entered into a contract with Verizon Wireless

17  for wireless voice and data communications services.  (Complaint ("Compl.") ¶¶ 9,

18  22, 23.)  Each contract provided for an initial two-year minimum term for the

19  service agreement.  (Request for Judicial Notice Exs. A, E.)  The Customer

20  Agreements that both Plaintiffs agreed to state:

21          If you terminate your service as of the end of your

22          minimum term, you won't be responsible for any

23          remaining part of your monthly billing cycle.  **Otherwise,**

24          **all terminations by you during a monthly billing cycle**

25          **become effective on the last day of that billing cycle.**

26          You'll remain responsible for all fees and charges

27          incurred until then and won't be entitled to any partial-

28          month credits or refunds.

1    (Request for Judicial Notice Exs. B at p. 2, D at p. 8 and F at p. 2 (emphasis in

2    originals).)

3         Plaintiff Darrin Willard cancelled his service agreement with Verizon

4    Wireless on or about December 21, 2009. (Compl. ¶ 23.) Pursuant to the terms of

5    the Customer Agreement, Willard was obligated to pay for the remainder of that

6    monthly billing cycle; the charges were not prorated. (*Id.*; Request for Judicial

7    Notice Exs. B at p. 2 and D at p. 8.)

8         Plaintiff Angela Gaspar entered into a service agreement with Verizon

9    Wireless in January of 2010. (Compl. ¶ 22.) Gaspar has not terminated her service

10   agreement. (*Id.*) Accordingly, the non-proration policy about which she complains

11   has not been applied to her. (*Id.*)

12        Willard and Gaspar do not allege that they were tricked or coerced into

13   entering into the service agreements with Verizon Wireless. In addition, neither

14   alleges that Verizon Wireless breached any term of their service contracts. Instead,

15   the Complaint is based solely on their after-the-fact dissatisfaction with terms of the

16   contracts that they entered into with Verizon Wireless and with Verizon Wireless's

17   compliance (or in the case of Gaspar, expected compliance) with those contract

18   terms.

19        Based on these allegations, Plaintiffs assert three claims: (1) violation of the

20   California Consumer Legal Remedies Act; (2) violation of California Business &

21   Professions Code section 17200; and (3) unjust enrichment/common law restitution.

22   (Compl.)

23        **III.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM**

24        Dismissal under Rule 12(b)(6) for failure to state a claim upon which relief

25   can be granted may be based either on the lack of a "cognizable legal theory or an

26   absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v.*

27   *Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] plaintiff's obligation to provide the

28   'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

1  and a formulaic recitation of a cause of action's elements will not do." *Bell Atl.*

2  *Corp. v. Twombly*, 550 U.S. 544 (2007).  A complaint or any claim therein should

3  be dismissed without leave to amend if the deficiencies of the complaint cannot be

4  cured by amendment. *Doe v. United States (In re Doe)*, 58 F.3d 494, 497 (9th Cir.

5  1995).  Here, Plaintiffs' Complaint is preempted by the FCA, fails to state a claim

6  on any of the three alleged causes of action and additionally fails to state any claim

7  on behalf of Plaintiff Angela Gaspar due to her lack of standing.  Because these

8  deficiencies cannot be cured by amendment, Plaintiffs' Complaint should be

9  dismissed with prejudice.

### A.   Plaintiffs' Claims Are Preempted By The Federal Communications Act

Section 332 of the Federal Communications Act explicitly preempts any

effort by the states to regulate the rates charged by wireless carriers.  47 U.S.C. §

332(c)(3)(A).  It states: "no State or local government shall have any authority to

regulate the entry of or the rates charged by any commercial mobile service or any

private mobile service, except that this paragraph shall not prohibit a State from

regulation the other terms and conditions of commercial mobile services."[2]  *Id.*  The

preemptive effect of Section 332 is not limited to traditional state utility regulation,

but also covers claims brought under general consumer law. *In re Wireless*

*Consumers Alliance, Inc.*, 15 F.C.C.R. 17021, 17037, 17041 (2000)("a court will

overstep its authority under Section 332 if…it does enter into a regulatory type of

---

[2] The last clause of section 332, which excludes from preemption the regulation of "other terms and conditions of commercial mobile services" does not apply to Plaintiffs' claims in this case.  Given the statute's express preemption of state regulation of rates and entry, the savings clause can only be read to preserve state authority over terms and conditions *other than* rates and entry.  Moreover, the last clause of section 332 has generally been interpreted in the context of rates and rate structures to permit only state-law claims premised on inadequate disclosures of rates and rate structures – which is not alleged in this case. *See, e.g., Spielholz v. Super. Ct.*, 86 Cal. App. 4th 1366, 1375 (2001).

1   analysis that purports to determine the reasonableness of a prior rate or it sets a

2   prospective charge for services.")

3         Pursuant to Section 332, any challenge to the reasonableness or legality of a

4   wireless carrier's rate is expressly preempted by federal law. *See, e.g., Ball v. GTE*

5   *Mobilnet of Cal.*, 81 Cal. App. 4th 529, 543 (2000)(state law claims preempted

6   where the claims "challeng[e] the reasonableness or legality of [a] particular rate or

7   rate practice"); *Cellco P'ship v. Hatch*, 431 F.3d 1077, 1082 (8th Cir. 2005)(finding

8   Minnesota statute requiring that changes to a customer agreement take effect

9   subject to a 60-day opt out period to be preempted); *Fedor v. Cingular Wireless*

10  *Corp.*, 355 F.3d 1069, 1073 (7th Cir. 2004)("state law claims are preempted where

11  the court must determine whether the price charged for a service is unreasonable, or

12  where the court must set a prospective price for a service."); *AT&T Corp. v. FCC*,

13  349 F.3d 692, 700-01 (D.C. Cir. 2003)(same); *In re Wireless Consumers Alliance,*

14  *Inc.*, 15 F.C.C.R. at 17035-36, 17041 (state law may not be applied in a way that

15  interferes with wireless carrier's right to "charge whatever price it wishes," or

16  "determine the reasonableness of a prior rate" or "sets a prospective charge for

17  services").  The FCC has explained that Section 332 preemption applies to actions

18  addressing both rate levels and rate structures. *In re Southwestern Bell*, 14

19  F.C.C.R. 19,898, 19,907 (1999) ("states not only may not prescribe how much may

20  be charged for these services, but also may not prescribe the rate elements"); *see*

21  *also In re Wireless Consumers Alliance, Inc.*, 15 F.C.C.R. at 17028 ("At the outset

22  of our analysis on the preemptive scope of Section 332, we observe that Section

23  332(c)(3)(A) bars state regulation of, and thus lawsuits regulating...the rates or rate

24  structures of CMRS providers.").

25         Plaintiffs' claims in this case are based on their allegation that the non-

26  proration policy should not be enforced because it is unconscionable, unenforceable

27  and illegal under California law.  (Compl. ¶¶ 70, 74.)  This lawsuit thus seeks a

28  judicial determination that the practice of charging for wireless service in monthly

1  increments – and of not prorating the charges for the final month of service – is

2  unreasonable based on the amount of services provided by Verizon Wireless to

3  Plaintiffs during their final monthly billing cycles under state law.  In order to

4  adjudicate these claims, the court would necessarily have to engage in a

5  reasonableness inquiry regarding Verizon Wireless's rates and billing rate structure,

6  which is precisely the inquiry that is prohibited by Section 332 preemption.  *See,*

7  *e.g., Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 n.4 (9th Cir.

8  2007)("in order for [plaintiff] to maintain his UCL claim, while avoiding FCA

9  preemption, his claim must be tied to the unfairness of AWS's disclosures

10  regarding its billing practices, and not to the practices themselves.").

11  Indeed, courts have repeatedly found that claims challenging a wireless

12  carrier's decision to charge for services in particular increments are preempted by

13  the Federal Communications Act.  For example, in *Ball. v. GTE Mobilnet of*

14  *California*, the California Court of Appeal found that the FCA preempts claims

15  challenging defendants' practice of rounding up to the next full minute of cellular

16  phone use for billing purposes.  *Ball*, 81 Cal. App. 4th at 537-40.  The court

17  explained that the claim that subscribers were being "overcharged for service"

18  because they were required to pay for time they did not use constitutes "a direct

19  challenge to the rates charged by the defendants for cellular phone service" and is

20  therefore preempted.  *Id.*  Here, just as in *Ball*, Plaintiffs claim that they are being

21  charged for a period of time (the balance of a monthly billing segment) they did not

22  use; such a claim constitutes "a direct challenge to the rates charged by the

23  defendants for cellular phone service" and is preempted.

24  Similarly, in *In re Comcast Cellular Telecom. Litigation*, the court found that

25  a challenge to the practice of rounding-up, and thus charging for calls in one-minute

26  increments, was preempted by the FCA because such claims "direct[ly] challenge

27  the reasonableness of the rates charged").  *In re Comcast Cellular Telecom.*

28  *Litigation*, 949 F. Supp. 1193, 1200 (E.D. Pa. 1996).  The FCC has reached the

1  same result, finding that a policy of charging for calls in whole minute increments

2  is exclusively governed by the FCA and any state law claims challenging such

3  policy are preempted. *In re Southwestern Bell*, 14 F.C.C.R. at 19,908.

4      Therefore, because Plaintiffs' claims in this lawsuit directly challenge

5  Verizon's billing rates and rate structure, they are preempted under Section

6  332(c)(3)(A) of the Federal Communications Act and must be dismissed.

7          **B.**    **Plaintiffs' First Cause Of Action Fails To State A Claim For Violation Of The CLRA**

8

9      Even if Plaintiffs' claims were not preempted, they would fail to state a claim

10  as a matter of law.  Plaintiffs allege that Verizon Wireless violated California Civil

11  Code Section 1770(a) subdivisions 14 and 19 by including the non-proration

12  provision in its service agreements.  In fact, inclusion of that provision in the

13  contracts does not violate either of the two enumerated subdivisions of the CLRA.

14          **1.**    **The Non-Proration Provision Does Not Violate Civil Code Section 1770(a)(14)**

15      Civil Code section 1770(a)(14) makes it a violation of the CLRA to

16  "[r]epresent[] that a transaction confers or involves rights, remedies, or obligations

17  which it does not have or involve, or which are prohibited by law."

18      Plaintiffs do not allege that Verizon Wireless represented that its service

19  agreements conferred or involved rights, remedies, or obligations which they did

20  not have or involve.  To the contrary, Plaintiffs filed this lawsuit because Verizon

21  Wireless abides by the terms of the service agreements – including the non-

22  proration provision – and not because it allegedly misrepresented any facts.

23  Because Plaintiffs do not allege that Verizon Wireless misrepresented any of the

24  terms in the service agreements, Plaintiffs fail to state a claim on this theory. *See,*

25  *e.g., Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 599 (2009)(plaintiff

26  failed to state a cause of action under subdivision (a)(14) because defendant did not

27  misrepresent the terms of the retail installment sale contract); *Van Ness v. Blue*

28  *Cross of Cal.*, 87 Cal. App. 4th 364, 377 (2001)(judgment for defendant on

1    subdivision (a)(14) claim affirmed where the clear language of the insurance policy

2    did not represent that the transaction confers or involves rights, remedies, or

3    obligations which it does not have or involve); *Augustine v. FIA Card Serv., N.A.*,

4    485 F. Supp. 2d 1172, 1174 (E.D. Cal. 2007)(finding no misrepresentation under

5    the CLRA where defendant's practice of retroactively increasing interest rates was

6    disclosed in the contractual agreement).

7        Although not apparent from the Complaint, Plaintiffs presumably contend

8    that Verizon Wireless violated subdivision (a)(14) of the CLRA because the

9    transaction with Plaintiffs involved rights, remedies, or obligations that are

10   "prohibited by law."  However, Plaintiffs fail to identify any law that prohibits the

11   non-proration provision that is the focus of Plaintiffs' lawsuit.  Nor in fact does any

12   provision of Federal or California law prohibit a wireless phone service provider

13   from selling service in monthly increments or from enforcing a contract that

14   requires customers to pay for a full month increment of service even if they choose

15   to cancel that service before the end of the month.  Absent any allegation that

16   identifies a law that prohibits these agreed-upon contract terms, Plaintiffs'

17   Complaint fails to state a claim under CLRA subdivision (a)(14).

18               **2.    The Non-Proration Provision Does Not Violate Civil
                         Code Section 1770(a)(19)**

19

20       Civil Code section 1770(a)(19) states that it is a violation of the CLRA to

21   "[i]nsert[] an unconscionable provision in the contract."  Plaintiffs allege that

     Verizon Wireless violated this subdivision by inserting the non-proration provision
22
     into their service agreements.  (Compl. ¶ 70.)  Plaintiffs cannot state a claim based
23
     on this alternate theory either, because the non-proration provision is not
24
     unconscionable as a matter of law.
25
         Unconscionability is a question of law for the court.  *Aron v. U-Haul Co. of*
26
     *Cal.*, 143 Cal. App. 4th 796, 808 (2006).  Unconscionability has both a procedural
27
     and substantive element – both of which must be present in order for a court to
28

1  invalidate a contract clause. *Aron*, 143 Cal. App. 4th at 808. Plaintiffs' conclusory
2  allegation that the non-proration provision is "unconscionable" – without any facts
3  that demonstrate such unconscionability – is insufficient to state a claim. *Shadoan*
4  *v. World Savings and Loan Ass'n*, 219 Cal. App. 3d 97, 103 (1990)("To allege that
5  the contract was unconscionable states no more than a legal conclusion" which is
6  insufficient to withstand demurrer). An examination of the sparse factual
7  allegations in Plaintiffs' Complaint demonstrates that Plaintiffs do not – and indeed
8  cannot – allege either, much less both, of the required elements of
9  unconscionability necessary to sustain their claim. Nor is such a claim plausible as
10 required by *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

### a.   Plaintiffs Have Not Alleged Procedural Unconscionability

The procedural element of unconscionability focuses on two factors:
oppression and surprise. *Aron*, 143 Cal. App. 4th at 808. "Oppression arises from
an inequality of bargaining power that results in no real negotiation and an absence
of meaningful choice." *Id*., citing *A & M Produce Co. v. FMC Corp.*, 135 Cal.
App. 3d 473, 486 (1982). "Surprise" involves the extent to which the challenged
term is hidden in a prolix printed form or is otherwise beyond the reasonable
expectation of the weaker party. *Morris v. Redwood Empire Bancorp*, 128 Cal.
App. 4th 1305, 1322-23 (2005); *Aron*, 143 Cal. App. 4th at 808.

Here, Plaintiffs have not alleged "oppression" because they do not allege that
they lacked alternative sources from which to purchase wireless phone service other
than Verizon Wireless. *Aron*, 143 Cal. App. 4th at 809 ("there can be no
'oppression' when the customer has meaningful choices," such as renting from
another truck rental company); *Belton v. Comcast Cable Holdings*, 151 Cal. App.
4th 1224, 1245 (2007)("The availability of alternative sources from which to obtain
the desired service defeats any claim of oppression, because the consumer has a
meaningful choice."). Absent any alleged facts demonstrating that Plaintiffs could

1   not purchase wireless phone service from any other source, their Complaint fails to

2   allege adequately the required element of procedural unconscionability. *Morris*,

3   128 Cal. App. 4th at 1320 (finding no oppression where plaintiff "failed to allege he

4   could not have obtained merchant credit card services from another source on

5   different terms" and where plaintiff was under no immediate pressure that

6   precluded him from seeking alternative sources); *Shadoan*, 219 Cal. App. 3d at 103

7   (dismissing claim where plaintiffs "alleged no facts indicating that they were unable

8   to receive more favorable terms from another lender, or from [defendant] by paying

9   a different interest rate, or by accepting a different type of loan or one with a

10   different term.").

11      Moreover, even if Plaintiffs were to allege that there were no alternative

12   sources of wireless phone service that did not involve similar non-proration

13   provisions – which they cannot – their claims would still fail because wireless

14   phone service is not a necessity and any contract to purchase a non-essential service

15   cannot be oppressive as a matter of law. *Belton*, 151 Cal. App. 4th at 1245-46

16   ("when the challenged term is in a contract concerning a nonessential recreational

17   activity [such as listening to music or FM radio], the consumer always has the

18   option of simply forgoing the activity" and therefore the contract term cannot be

19   oppressive.)

20      In addition, Plaintiffs have not alleged "surprise" because the non-proration

21   policy was clearly printed and explained in the Customer Agreements to which they

22   agreed. *Aron*, 143 Cal. App. 4th at 809 (finding no surprise where defendant

23   disclosed the terms of its refueling policy in the rental contract).  The challenged

24   policy was printed on the second page of the Customer Agreement under the

25   heading "Your Rights to Change or End Your Service." (Request for Judicial

26   Notice, Exs. B at p. 2, D at p. 8, and F at p. 2.)  Not only was this term written in

27   plain English – as opposed to undecipherable legalese – but part of it was also

28   printed in bold font to make it even more noticeable. *Morris*, 128 Cal. App. 4th at

1   1321 (finding no surprise where challenged provision is easily located due to use of

2   headings – "a clear heading in a contract may refute a claim of surprise").

3   Moreover, Plaintiffs do not allege that they were unaware of the non-proration

4   provision when they executed their service agreements or that the terms were

5   otherwise hidden from them.  *Id.*

6                    **b.    Plaintiffs Have Not Alleged Substantive**
                             **Unconscionability**
7

8        The substantive element of unconscionability focuses on the actual terms of

9   the agreement and evaluates whether they create "overly harsh" or "one-sided"

10  results that "shock the conscience." *Aron*, 143 Cal. App. 4th at 808, citing *A & M*

11  *Produce Co.*, 135 Cal. App. 3d at 487; *Morris*, 128 Cal. App. 4th at 1322.  "The

12  phrases 'harsh,' 'oppressive,' and 'shock the conscience' are not synonymous with

13  'unreasonable.'" *Aron*, 143 Cal. App. 4th at 809, citing *Morris*, 128 Cal. App. 4th

14  at 1322-23.  As courts have recognized:

15               Basing an unconscionability determination on the

16               reasonableness of a contract provision would inject an

17               inappropriate level of judicial subjectivity into the

18               analysis.  With a concept as nebulous as

19               "unconscionability" it is important that courts not be

20               thrust in the paternalistic role of intervening to change

21               contractual terms that the parties have agreed to merely

22               because the court believes the terms are unreasonable.

23               The terms must shock the conscience.

24  *Morris,* 128 Cal. App. 4th at 1322-23, quoting *Am. Software, Inc. v. Ali*, 46 Cal.

25  App. 4th 1386, 1391 (1996); *Aron*, 143 Cal. App. 4th at 809; *Belton*, 151 Cal. App.

26  4th at 1247.

27       Here, Verizon Wireless's non-proration provision does not shock the

28  conscience.  To the contrary, it is entirely reasonable to require customers to pay for

1  a full month of service when such service is specifically sold in monthly

2  increments. This policy certainly does not rise to the level of being "overly harsh"

3  or "one-sided" so as to shock the conscience. Indeed, it is a common practice in a

4  wide variety of service industries.

5        Plaintiffs' allegation that the policy is unconscionable because Verizon

6  Wireless has access to data regarding "the precise amount of wireless voice or data

7  communications service a consumer has used at the time of cancellation of the

8  service agreement," and thus has the technical ability to prorate the final month of

9  charges, is unavailing. (Compl. ¶¶ 47-48.) The California Court of Appeal rejected

10 a similar argument in *Belton*, 151 Cal. App. 4th at 1224, where the plaintiffs alleged

11 that it was substantively unconscionable for a cable company to require customers

12 to purchase the basic cable television tier in order to listen to music or FM radio on

13 their televisions because it was "technically possible" to provide those services

14 separately. As the *Belton* court explained: "Even if we accept arguendo that it was

15 legally and technically possible to provide these services separately, it does not

16 'shock the conscience' for Comcast to make a business decision to package them

17 together." *Belton*, 151 Cal. App. 4th at 1247. Here, the same is true of Verizon

18 Wireless's monthly charges. Even if it was technologically possible to calculate

19 prorated charges based on individual customer usage, it does not shock the

20 conscience for Verizon Wireless to include a contract term that does not provide for

21 such proration.

22        Moreover, because it is within the exclusive control of the customer to

23 determine when in the monthly billing cycle to cancel his or her service – and thus

24 whether he or she will be required to pay for any service after the date of

25 cancellation – the challenged provision is not harsh or oppressive. Indeed, Verizon

26 Wireless's non-proration policy is less harsh and oppressive than other contract

27 provisions that courts have concluded are not substantively unconscionable as a

28 matter of law. *See, e.g., Aron*, 143 Cal. App. 4th at 809 ("U-Haul's $20 fueling fee,

1    additional charges for fuel used but not replaced, and allegedly illegal measuring
2    system do not shock the conscience as a matter of law"); *Morris*, 128 Cal. App. 4th
3    at 1323-24 ($150 fee charged by defendants upon termination of a credit card
4    merchant account, which is equivalent to six months of the minimum processing
5    fee, does not shock the conscience); *Belton*, 151 Cal. App. 4th at 1246-47 (policy
6    requiring blind people to purchase basic tier of cable television in order to receive
7    music services on their televisions does not shock the conscience); *Wayne v.*
8    *Staples, Inc.*, 135 Cal. App. 4th 466, 483 (2006)("Staples's...charge of $0.70 per
9    $100 of declared value over $100 – a 100 percent markup on coverage for which
10   UPS charged only $0.35 per $100 – does not shock the conscience as a matter of
11   law."). There is, not surprisingly, no authority in California for the rather fantastic
12   notion that it is somehow "unconscionable" to refuse to package services in the
13   minimum time increment that is technically feasible.

14               **C.    Plaintiffs' Second Cause Of Action Fails To State A Claim**
                         **For Violation Of California Business & Professions Code**
15                       **Section 17200**

16        Plaintiffs' second claim alleges that Verizon Wireless's non-proration policy
17   constitutes an "unfair, unlawful or fraudulent" business practice in violation of
18   California's Unfair Competition Law embodied in Business & Professions Code
19   section 17200. (Compl. ¶ 76.) Plaintiffs do not state a claim based on any of the
20   three prongs of the Unfair Competition Law.

21               **1.    Plaintiffs Have Not Alleged Any Unlawful Conduct**
22        Plaintiffs' claim based on the "unlawful" prong of the Unfair Competition
23   Law fails because Verizon Wireless's policy is not unlawful. Plaintiffs primarily
24   rely on the alleged violation of the CLRA for the underlying "unlawful" act.
25   (Compl. ¶ 76(a) and (b).) However, for the reasons set forth above, Verizon
26   Wireless's non-proration policy does not violate the CLRA and therefore the CLRA
27   cannot serve as the foundation for a claim based on the "unlawful" prong of the
28   Unfair Competition Law.

1    Plaintiffs also allege that Verizon Wireless's non-proration policy imposes

2    "unlawful penalties." (Compl. ¶ 76(c).)   This allegation also fails to support any

3    claim for an unlawful business practice under the Unfair Competition Law.  Despite

4    Plaintiffs' mischaracterization, Verizon Wireless's non-proration policy by no

5    means constitutes a "penalty," which is defined as a pre-determined amount of

6    liability that will be incurred in the event of a breach of contract that is made

7    without reference to the actual damages likely to be sustained as a result of such

8    breach. *Dyer Bros. Golden West Iron Works v. Central Iron Works*, 182 Cal. 588,

9    592 (1920); *Ricker v. Rombough*, 120 Cal. App. 2d Supp. 912, 917 (1953).  Here,

10   the non-proration policy at issue is not implicated when a customer breaches their

11   service agreement.  Indeed, there is no allegation here that either of the Plaintiffs

12   breached their service agreements or had to pay any monetary sum as a result.

13   Instead, the challenged non-proration policy is nothing more than a billing structure

14   that provides for the sale of wireless service in monthly increments.  Plaintiffs have

15   not identified any law that makes such a billing structure unlawful.  Accordingly,

16   Plaintiffs cannot state a claim based on the "unlawful" prong of the Unfair

17   Competition Law.

18            **2.     Plaintiffs Have Not Alleged Any Fraudulent Conduct**

19   Plaintiffs' second cause of action also fails to the extent it is based on the

20   "fraudulent" prong of the Unfair Competition Law.  To establish a claim under the

21   fraudulent prong, Plaintiffs must allege that Verizon Wireless made representations

22   that were false or likely to mislead. *Belton*, 151 Cal. App. 4th at 1241.  Plaintiffs

23   have not alleged any such facts.

24   Plaintiffs do not allege that Verizon Wireless ever made any false or

25   misleading statement.  Instead, Plaintiffs merely challenge Verizon Wireless's right

26   to enforce the terms of the contract that Plaintiffs entered into.  Because the terms

27   of the non-proration policy are clearly stated in the Customer Agreement to which

28   Plaintiffs agreed, Verizon Wireless's enforcement of that policy cannot support a

1   claim under the "fraudulent" prong of the Unfair Competition Law.  *Shvarts v.*

2   *Budget Group, Inc.*, 81 Cal. App. 4th 1153, 1160 (2000)(dismissing claim based on

3   fraudulent prong where the challenged policy was "clearly printed, in boldface, in

4   the rental agreement provided to appellants at the time of rental.").

5                  **3.    Plaintiffs Have Not Alleged Any Unfair Conduct**

6          Plaintiffs' Complaint also fails to state a claim under the "unfair" prong of

7   the Unfair Competition Law.  An "unfair" business practice occurs "when it offends

8   an established public policy or when the practice is immoral, unethical, oppressive,

9   unscrupulous or substantially injurious to consumers."  *Spiegler v. Home Depot*

10  *U.S.A., Inc.,* 552 F. Supp. 2d 1036, 1045 (C.D. Cal. 2008), quoting *People v. Casa*

11  *Blanca Convalescent Homes Inc.*, 159 Cal. App. 3d 509 (1984).  Although the

12  standard applicable to consumer claims under the "unfair" prong of the Unfair

13  Competition law is in flux, courts generally recognize that one of two tests must be

14  satisfied in order to state a claim.  Under the first Cel-Tech test, any finding of

15  unfairness must "be tethered to some legislatively declared policy."  *Cel-Tech*

16  *Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)*; Spiegler*,

17  552 F. Supp. 2d at 1045.   Under the alternative balancing test approach, the utility

18  of the defendant's challenged conduct is weighed against the gravity of harm to the

19  alleged victims. *Spiegler*, 552 F. Supp. 2d at 1045.  Regardless of which standard is

20  applied to the facts of this case, Plaintiffs' Complaint fails to state a claim.

21         Plaintiffs have not stated a claim under the Cel-Tech test because the

22  Complaint does not identify any "legislatively declared policy" that Verizon

23  Wireless's conduct allegedly violates.  Absent an allegation that the challenged

24  conduct is tethered to some legislatively declared policy, unfairness has not been

25  pleaded. *Spiegler*, 552 F. Supp. 2d at 1045.

26         Nor have Plaintiffs stated a claim based on the balancing test approach,

27  because they do not allege any harm that they allegedly suffered as a result of

28  Verizon Wireless's challenged policy.  Indeed, all Plaintiffs allege is that Verizon

1   Wireless enforced (or is expected to enforce) the terms of the contracts to which
2   they each agreed. Judge Snyder in *Spiegler* found that these types of allegations are
3   insufficient to allege a prima facie case of harm or to establish unfairness under the
4   balancing test approach. As the *Spiegler* court stated: "Plaintiffs entered into
5   written contracts with defendants. Defendants complied with the express terms of
6   the contracts, and charged plaintiffs in accordance with their terms. Plaintiffs have
7   not identified a single false or misleading oral or written representation allegedly
8   made by defendants. Nor have plaintiffs identified any conduct that can constitute
9   deceit. … The Court therefore concludes that plaintiffs have failed to state a claim
10  under the 'unfairness' prong of the UCL." *Spiegler*, 552 F. Supp. 2d at 1045-46.

11      Here, the sole basis for Plaintiffs' lawsuit is their dissatisfaction with one of
12  the terms of the service contract to which they expressly agreed. However,
13  Plaintiffs' after-the-fact dissatisfaction with a contract term that they freely entered
14  into cannot support a claim. "The 'unfairness' prong of the UCL 'does not give the
15  courts a general license to review the fairness of contracts.'" *Spiegler*, 552 F. Supp.
16  2d at 1046, citing *Samura v. Kaiser Found. Health Plan, Inc.*, 17 Cal. App. 4th
17  1284, 1299 (1993). Thus, when parties enter into a valid contract that contains a
18  term subsequently challenged on the basis that it is unfair, the Unfair Competition
19  Law cannot be used to rewrite the contract or determine whether the terms of
20  contract are fair. *Spiegler*, 552 F. Supp. 2d at 1046; *see also, Van Ness*, 87 Cal.
21  App. 4th at 376 (plaintiff cannot state a claim for unfair business practices where
22  the challenged insurance coverage practice is set forth in "the clear language of the
23  [insurance] policy."); *Baggett v. Hewlett-Packard Co.*, No. SACV 07-0667 AG
24  (RNBx), 2009 U.S. Dist. LEXIS 95241, at *10 (C.D. Cal. Sept. 29,
25  2009)(defendant "did not commit an unfair business practice by providing Plaintiff
26  with exactly what he bargained for"). Here, Plaintiffs do not allege they were
27  unaware of the non-proration policy, nor could they because it was stated clearly in
28  the contract terms to which they agreed. In addition, Plaintiffs' allegations

regarding the font size and location of the non-proration provision within the
Customer Agreement, even if accepted as true, are insufficient to establish
unfairness. *See, e.g., Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953, 966
(2003)("there is no requirement that reasonable notice has to be the best possible
notice").

Plaintiffs' "unfair" claim also fails because it was within Plaintiffs' exclusive
discretion to decide when to cancel their wireless service contracts and thus
whether to do so earlier than the last day of a monthly billing cycle.  Where, as
here, each plaintiff reasonably could have avoided the alleged injury, there can be
no claim based on the "unfair" prong of the Unfair Competition Law. *Davis*, 179
Cal. App. 4th at 598 (finding no unfair practice where "the alleged injury...,
namely, the imposition of successive late fees for successive months, reasonably
could have been avoided had [plaintiff] made his monthly payments timely, or
within the 10-day grace period, in accordance with his obligations under the
contract."); *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1406
(2006)(finding no unfair practice where "the 'injury' in this case is one that
[plaintiff] could have reasonably avoided").

### D. Plaintiffs' Third Cause Of Action Fails To State A Claim For Unjust Enrichment/Common Law Restitution

Plaintiff's third claim for unjust enrichment/common law restitution must
also be dismissed for failure to state a claim.  It is widely acknowledged that there
is no cause of action in California for unjust enrichment. *Lopez v. Wash. Mut.
Bank*, No. 1:09-CV-1838 ANI JLT, 2010 U.S. Dist. LEXIS 38307, at *28-29 (E.D.
Cal. Apr. 16, 2010); *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1307 (S.D.
Cal. 2009); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010);
*Jogani v. Super. Ct.*, 165 Cal. App. 4th 901, 911 (2008); *Melchior v. New Line
Prods., Inc.*, 106 Cal. App. 4th 779, 794 (2003).  Instead, "unjust enrichment" is a
general principle underlying various legal doctrines and remedies, rather than a

1  cause of action itself. *Lopez*, 2010 U.S. Dist. LEXIS, at *29; *Lorenzo,* 603 F. Supp.

2  2d at 1307; *Melchior*, 106 Cal. App. 4th at 784, citing *Dinosaur Dev., Inc. v. White*,

3  216 Cal. App. 3d 1310, 1315 (1989). "Unjust enrichment" is synonymous with

4  restitution. *Durell*, 183 Cal. App. 4th at 1370.

5      Here, Plaintiffs already seek the remedy of restitution for the same alleged

6  conduct through their second claim under the Unfair Competition Law. (Compl. ¶

7  78.) Thus, their third claim must be dismissed not only because it is not a

8  recognized cause of action in California, but also because it is duplicative of the

9  remedy already sought in the second claim for relief. *See, e.g., Jogani*, 165 Cal.

10  App. 4th at 911 (separate cause of action entitled "unjust enrichment" adds nothing

11  where it is merely duplicative of the relief sought in another cause of action);

12  *Lopez*, 2010 U.S. Dist. LEXIS, at *29 (dismissing unjust enrichment claim).

### E.  Plaintiff Angela Gaspar Lacks Standing To Assert Any Claim

In addition to the reasons set forth above, the claims of Plaintiff Angela

Gaspar must also be dismissed due to her failure and inability to allege that she has

been harmed by Verizon Wireless's non-proration policy. As set forth in the

Complaint, Gaspar only recently entered into a wireless phone service agreement

with Verizon Wireless. (Compl. ¶ 22.) She does not allege that she has cancelled

her service agreement or that the non-proration provision has been applied to her.

(*Id.*) Thus, even if this Court were to conclude that it was improper for Verizon

Wireless to charge customers for the remaining time in their final billing cycle

when they cancel before the last day of the billing cycle, Gaspar has not had to pay

any such non-prorated charges and thus has not suffered any alleged damage as a

result of the challenged policy.

In addition, at this point in time, it is entirely speculative whether Gaspar will

suffer any harm from the challenged non-proration policy in the future. *See, e.g.,*

*Lee v. Chase Manhattan Bank*, No. C07-04732 MJJ, 2008 U.S. Dist. LEXIS 25007,

1    at *7 (N.D. Cal. Mar. 14, 2008)(dismissing claims where plaintiffs' "theory of

2    injury...rests on a series of hypothetical assumptions about what may or may not

3    transpire").  Given Gaspar's sensitivity to this issue, it is possible (indeed likely)

4    that Gaspar will choose to cancel her service agreement on the final day of her

5    monthly billing cycle in order to avoid the charges she considers to be unfair.  If she

6    does so, she will not have suffered the alleged harm that this lawsuit seeks to

7    challenge.

8       Allegations of harm are required in order to state a claim for relief under the

9    CLRA or the Unfair Competition Law.  *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th

10   634, 641 (2009)("in order to bring a CLRA action, not only must a consumer be

11   exposed to an unlawful practice, but some kind of damage must result"); *Durell*,

12   183 Cal. App. 4th at 1367 ("Relief under the CLRA is specifically limited to those

13   who suffer damage"); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 849 (2008)("A

14   plaintiff must have suffered an 'injury in fact' and have 'lost money or property as a

15   result of the unfair competition' to have standing to pursue...a...claim under the

16   California unfair competition law.")

17       Therefore, absent any allegation that she has suffered any tangible harm as a

18   result of the challenged policy, Gaspar lacks standing to assert her claims against

19   Verizon Wireless and they should be dismissed.  *Jensen v. Quality Loan Serv.*

20   *Corp.*, No. 09-CV-01789-OWW-DLB, 2010 U.S. Dist. LEXIS 26647, at *40 (E.D.

21   Cal. Mar. 19, 2010)(dismissing Unfair Competition Law claim where plaintiff has

22   not alleged any facts suggesting that he lost money or property as a result of the

23   alleged violation); *Hoffman v. Cingular Wireless, LLC*, No. 06-CV-1021 W(BLM),

24   2008 U.S. Dist. LEXIS 67573, at *13 (S.D. Cal. Sept. 4, 2008)(dismissing CLRA

25   and Unfair Competition Law claims due to plaintiffs' failure to plead facts

26   supporting the contention that they were harmed by defendant's conduct); *Meyer v.*

27   *Sprint Spectrum L.P.*, 45 Cal. 4th at 646 (affirming holding that plaintiffs'

28

1  complaint does not sufficiently allege a cause of action for injunctive relief under

2  the CLRA where any alleged harm is speculative).

3      **IV.   CONCLUSION**

4      For all of the foregoing reasons, Verizon Wireless respectfully requests that

5  the Court grant the motion to dismiss with prejudice.

6

7  Dated:    June 4, 2010        DAN MARMALEFSKY
                    SAMANTHA P. GOODMAN

8                      MORRISON & FOERSTER LLP

9

10                      By:/s/ Dan Marmalefsky

11                          Dan Marmalefsky

12                      Attorneys for Defendant
                    CELLCO PARTNERSHIP dba

13                      VERIZON WIRELESS

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28